GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
ARIEL A. NEUMAN (Cal. State Bar No.: 241594)
JUSTIN RHOADES (Cal. State Bar No.: 230463)
JEFF MITCHELL (Cal. State Bar No.: 236225)
Assistant United States Attorneys
Violent & Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2917/3380/0698
    Facsimile: (213) 894-3713
    E-mail: ariel.neuman@usdoj.gov
            justin.rhoades@usdoj.gov
            jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
United States of America

                    UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 09-230(A)-SVW |
| | ) | |
| Plaintiff, | ) | <u>GOVERNMENT'S POSITION RE:</u> |
| | ) | <u>SENTENCING FOR DEFENDANT</u> |
| v. | ) | <u>RYAN LEONE</u> |
| | ) | |
| RAMON NARCISO MORALES MENDOZA, | ) | |
| ET AL., | ) | |
| | ) | SENTENCING DATE: **10/5/2009** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

     Plaintiff United States of America, by and through its

counsel of record, the United States Attorney for the Central

District of California, hereby files its sentencing position

relating to defendant Ryan Leone.

///

///

1      The United States' position regarding sentencing is based

2  upon the attached memorandum of points and authorities, the files

3  and records in this case, the Presentence Report, and any other

4  evidence or argument that the Court may wish to consider at the

5  time of sentencing.

6

7  DATED: September 28, 2009      Respectfully submitted,

8                                    GEORGE S. CARDONA
                                     Acting United States Attorney

9                                    CHRISTINE C. EWELL

10                                   Assistant United States Attorney
                                     Chief, Criminal Division

11

12                                       /s/

13                                   JEFF MITCHELL
                                     Assistant United States Attorney

14

15                                   Attorneys for Plaintiff
                                     United States of America

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On June 29, 2009, defendant Ryan Leone ("defendant") pled guilty to Count One of the First Superseding Indictment, conspiracy to distribute more than 100 grams of heroin but less than 400 grams of heroin in violation of 21 U.S.C. § 846. Defendant admitted that he acted as a broker for the heroin, selling it to others in the Santa Barbara area who would then resell the heroin to users and admitted that the conspiracy involved the distribution of more than 100 grams of heroin but less than 400 grams.  (Plea Agreement ¶ 11).  Defendant admitted that he regularly called co-defendant Diana Michelle Abreu Ortiz ("Ortiz") on the telephone to order heroin from Pedro Luis Perez-Cruz, aka "Arguayo" ("Perez-Cruz").  Defendant took delivery of the heroin from co-defendant Ortiz and others, and then transported it to the Santa Barbara area where he sold the heroin for profit.  Id.  Defendant admitted to specific instances wherein he undertook these activities, including on November 20, 2008, when defendant possessed with the intent to distribute approximately 88.4 grams of heroin that he received from co-defendant Ortiz.  Another example that defendant admitted to occurred on November 22, 2008, when defendant possessed with the intent to distribute approximately 122 grams of heroin that he received from co-defendant Ortiz.  Id.  Not only did defendant admit to these acts, but defendant also told officers that for approximately one year he purchased 1,000 balloons per week from co-defendant Ortiz at $5 per balloons, and resold the balloons in Santa Barbara for $20 per balloon.  (PSR ¶ 22).  If these

1

assertions are even close to accurate, defendant profited approximately $780,000 during this one year period.[1]

## II.  THE PRESENTENCE REPORT

The United States Probation Office ("USPO") prepared a Presentence Report ("PSR"), which was disclosed to the parties on September 14, 2009.  The PSR calculated the total offense level as follows:

    Base Offense Level  :     26    U.S.S.G. § 2D1.1(c)(7)

    Acceptance of
    Responsibility      :     -3    U.S.S.G. § 3E1.1

PSR ¶¶ 33-43; see also, Plea Agreement ¶ 14.  The PSR also calculated a criminal history category of III based on five criminal history points.  PSR ¶¶ 63-64.  The PSR calculated the guideline sentence to be 60-71 months imprisonment, a minimum of 4 years' supervised release, and a mandatory special assessment of $100.  (PSR ¶ 134-145).

## III. PROBATION OFFICE'S RECOMMENDATION

The United States Probation Office recommended the following sentence: a 60-month term of imprisonment, a four-year term of supervised release, a special assessment of $100, and a mental health evaluation and treatment.  (USPO Recommendation Letter at 1).  The Probation Officer found that defendant does not have the ability to pay a fine.  Id. at 5.

//

//

--------

[1] $15 ($20 - $5) x 1,000 balloons x 52 (weeks per year)

**IV.  THE GOVERNMENT'S RECOMMENDATION**

The United States does not object to the calculations and findings set forth in the PSR,[2] or to the Probation Officer's recommended sentence which is equivalent to the statutory mandatory minimum applicable in this case.

Accordingly, and as set forth herein, the United States submits that defendant should be sentenced to the low end of the guideline range.[3]  Specifically, the government recommends the following sentence: a term of 60 months imprisonment, followed by a 4-year term of supervised release, and a mandatory special assessment of $100.  The recommended sentence addresses the considerations set forth at 18 U.S.C. § 3553(a), as discussed herein.

       1.  The Nature And Circumstances Of The Offense and the History and Characteristics of the Defendant

Section 3553(a)(1) provides that the Court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant.  Here, defendant has admitted to being more than a reseller.  Defendant acted as a broker, purchasing large quantities of heroin and selling the heroin to numerous heroin resellers in Santa Barbara.  As admitted by

---

[2] The United States, thus, hereby moves and requests the Court to grant defendant the additional 1-level reduction, pursuant to Section 3E1.1(b) of the Sentencing Guidelines based on the timely notification of defendant's intention to plead guilty.  U.S.S.G. § 3E1.1(b).

[3] In United States v. Booker, 125 S. Ct. 738 (2005), the United States Supreme Court held that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  125 S. Ct. at 757.

1    defendant, his profit margin was 300%.[4]

2         The PSR noted that defendant has never held any steady

3    employment, but he did sell artwork and memorabilia on Ebay.

4    While defendant may have been trying to start a legitimate

5    businesses reselling art, the probation officer also noted that

6    defendant's father did not know the source of funds used for the

7    initial investment to purchase the art.  (PSR ¶ 114).  Because

8    defendant's parents admittedly were that not source (Id.),

9    defendant's heroin business is the most likely source of the

10   initial art funds.  While it may seem commendable that defendant

11   was attempting to start a legitimate business reselling art, if

12   defendant used proceeds from his heroin distribution to fund the

13   art business it would be in essence money laundering.

14        Defendant suffers from addiction to heroin and a bi-polar

15   disorder, and has submitted numerous documents from friends,

16   family, and consultants suggesting that his disorder is the cause

17   of the instant offense.  Defendant, however, has attended at

18   least 13 drug rehabilitation centers for his drug addiction (PSR

19   ¶ 110), and has also been previously treated for his bi-polar

20   disorder.  Defendant has even received simultaneous treatment for

21   his heroin addiction and bi-polar disorder in the past.  All of

22   which have failed to rehabilitate defendant.

23        While the PSR does not discuss all of defendant's drug

24   treatment programs, the following is a list of the programs the

25   PSR does discuss:

26

27

28        [4] (Sales price - cost)/cost = ($20-$5)/$5

- • Numerous residential drug treatment programs between the ages of 16 and 17. (PSR ¶ 74).
- • SUWS wilderness survival program. (PSR ¶ 91)
- • Two separate attempts at drug treatment at the Aspen Ranch. (PSR ¶ 75).
- • Eight different attempts at drug treatment at Watershed, in Boca Raton, FL. (PSR ¶ 76).
- • Cornerstone of Southern California in 2006 (PSR ¶ 94).
- • Cottage Hospital. (PSR ¶ 103).
- • Dr. Gerald Svedlow, M.D. - addiction specialist (PSR ¶ 102)
- • Joseph Frawley, M.D. - addiction specialist (PSR ¶ 102)
- • Treated at Aegis in 2007, a methadone clinic. (PSR ¶¶ 84(i), 104)

While it is not clear exactly how many attempts at treatment defendant had for his bi-polar disorder, they "began at a young age as his parents were proactive in watching for signs of bi-polar disorder so he could receive appropriate treatment." (PSR ¶ 71). Defendant was officially diagnosed with a bi-polar disorder as a teenager approximately eight years ago. (PSR ¶¶ 74, 84(a), 92). After defendant was diagnosed with a bi-polar disorder, defendant was enrolled in at least two different programs to simultaneously treat both his mental health and his drug addiction. This occurred first at Watershed, which was a dual program. (PSR ¶ 78). Defendant enrolled and left Watershed eight different times. (PSR ¶ 76). Defendant also received dual treatment for his drug addiction and bi-polar disorder in 2006 from Cornerstone of Southern California in which he was treated

with a number of medications, including Lithium, Zoloft, Depakote, Respierdal, and Naltrexone. (PSR ¶ 94). The defendant has also seen several therapists regarding his bi-polar disorder. (PSR ¶ 92).

Defendant has had opportunities and resources that most defendants do not have. Defendant's parents have stopped at nothing to help treat defendant. All of their efforts have failed.

                    2.   The Need For The Sentence Imposed

Section 3553(a)(2) provides that in determining the particular sentence, the Court shall consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. As alleged in the indictment, the instant conspiracy was a long-running conspiracy kept going by various members of the Mendoza organization in Mexico, who would come to the United States in order to coordinate and facilitate the distribution of heroin. The offense was a serious one in that this organization was responsible for the distribution of large amounts of heroin throughout southern California, continuously supplying the region for many years. Moreover, defendant's role in the organization was ongoing for at least one year in which he acted a broker and provided the organization access to Santa Barbara by suppling the heroin dealers in Santa Barbara. The fact that Santa Barbara heroin resellers were able to charge $40 per balloon (PSR ¶ 22) (700% markup) suggests there were few alternatives, if any at all, of heroin supply in Santa Barbara. In order to deter the

organization from continuing to operate and to deter others from attempting to replace those arrested, a significant period of incarceration is warranted for defendant.

      3.   <u>Need to Avoid Unwarranted Sentence Disparities</u>

Section 3553(a)(6) provides that in determining the particular sentence, the Court shall consider the need to avoid unwarranted sentence disparities. Following the recommended sentencing guideline range will avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Here, the USPO has recommended a low-end guideline range for defendant, equivalent to the statutory mandatory minimum. Such a sentence would be similar, if not equivalent, to the sentence recommendations that the United States has agreed to with the co-defendants in the case who also acted as brokers. <u>See</u> plea agreements for Juan Garcia Lopez (Document Filing No. 641) and Fredy Salmoran (Document Filing No. 643)(Both signed plea agreements stipulating to base offense level of 26 with a low-end recommendation).

**V.   CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 60 months imprisonment, four years of supervised release, and a special assessment of $100.