# EXHIBIT E

**Elisabeth Haub School of Law**

PACE UNIVERSITY

SCHOOL OF LAW
MICHAEL B. MUSHLIN
PROFESSOR OF LAW

EMAIL: MMUSHLIN@.LAW.PACE.EDU

78 NORTH BROADWAY
WHITE PLAINS, NY 10603
TEL: (914) 422-4258
FAX: (914) 422-4168

HTTP://WWW.LAW.PACE.ED

March 6, 2018

Honorable Stephen V. Wilson
United States District Judge
First Street Courthouse, 350 W. 1st Street,
Courtroom 10A, 10th Floor
Los Angeles, CA 90012

                *Re: Ryan Leone*

Dear Judge Wilson:

    I am writing you on behalf of Ryan Leone. I am close friend of Ryan's father Frank Leone and have known Ryan his entire life. Because my field is prison law[1] I have had especial concern for Ryan during his federal imprisonment. I kept in close touch with him especially during the time that he was in solitary confinement. When he was released from solitary confinement directly back to the community I was extremely concerned. Releasing Ryan in that manner posed clear dangers and was

---

[1] I am a Professor of Law at Elizabeth Haub School of Law at Pace University. I am the author of **Rights of Prisoners (5th Ed. West Publishing Co. 2017),** a four volume treatise, and a member of the American Bar Association's Task Force on the Legal Status of Prisoners. The Task Force drafted the ABA's Standards on the Treatment of Prisoners which was adopted by the House of Delegates in 2010. *See* American Bar Association, *Standards for Criminal Justice, Treatment of Prisoners* (2010). I am also a co-chair of the American Bar Association, Subcommittee on Implementation of the ABA Resolution on Prison Oversight, and have served as chair of the Committee on Correction of the New York City Bar Association, the Correctional Association of New York and the Osborne Association (an organization that provides training and support programs for people in jail and prison or who are being diverted from imprisonment). Currently, I am a member of the board of the Correctional Association of New York, a 174 year old organization endowed by New York law with the authority to visit New York State Prisons with the responsibility to report on their condition to the New York state legislature. With colleagues, including Prof. Michele Deitch of the University of Texas, I participated in the organization of two national conferences on prison reform, the first *Prison Reform Revisited: The Unfinished Agenda* held at Pace Law School and the second, *Opening Up a Closed World: What Constitutes Effective Prison Oversight* held at the University of Texas. Both conferences drew together professionals from all segments of the criminal justice and corrections fields to discuss improvement to the operation and oversight of the American prison system. The proceedings of both conferences are published in the Pace Law Review. Also by invitation I participated in a national conference held at the John Jay College of Criminal Justice in 2015 which brought together 15 correctional administrators in dialogue with the same number prison reform advocates over this issue including the head of the California prison system to determine whether there was a broad consensus about how to use solitary confinement and to outline what that consensus is. For a report of this conference and its conclusions s*ee* Martin F. Horn & Ann Jacobs, "*Solitary Confinement: Ending the Over-Use of Extreme Isolation in Prison and Jail: Report on a Colloquium to Further a National Consensus On Ending the Over-Use of Extreme Isolation*" (2016).

contrary to best practices of the corrections profession and to the standards of our profession. I feared that violation of those important norms in Ryan's case might cause erratic behavior in the short term that might make his reentry to society much more difficult in the first instance than it ought to be. I am writing to you to briefly outline the reasons for this belief and why I firmly believe that you can and should take this into account in fashioning a just disposition of the pending case before you involving Ryan.

Solitary confinement is universally recognized as posing serious risks to persons exposed to it. It is considered especially dangerous to the person confined as well as to the general community to release a person held in these conditions directly from solitary confinement to the community as happened with Ryan. Indeed, such a release is a direct violation of the standards of the legal profession. The American Bar Association, in its *Standards for Criminal Justice, Treatment of Prisoners* (2010) expressly states that states that: "[e]xcept in compelling circumstances, a prisoner serving a sentence who would otherwise be released directly to the community from long-term segregated housing (any confinement over 30 days as was Ryan's is considered long-term) should be placed in a less restrictive setting for the final months of confinement." There is good reason for this. It is difficult reentering society from a normal prison environment, but doing so from solitary is infinitely more difficult and disorienting, and can lead to behavior that runs afoul of the law.

Based on what I have learned from my professional involvement in this area, as well as my knowledge of Ryan, I believe firmly that had Ryan not been subjected to such treatment he would not have engaged in unlawful behavior in the period directly following his release from solitary confinement. Had he not been released directly from solitary confinement into the community I believe that rather than engage in criminal behavior Ryan would have acted in a lawful manner much more in keeping with the person that he is: an exceptionally talented young man with much to offer.

I would be happy to answer any questions or to discuss this with you further. Thank you for your consideration.

Sincerely,

*/s/ Michael B. Mushlin (e-signature)*

Michael B. Mushlin
Professor of Law